I, Ryan A. Martin, a Law Enforcement Officer with the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states:

## INTRODUCTION

1. I am a "federal law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7) Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request an arrest warrant. I have been employed by the FBI since May of 2016, and have been assigned to the Cleveland Division, Akron Resident Agency, since October of 2016. I am currently assigned to work violent crimes, crimes against children, and other criminal investigations. I have gained experience through training at the FBI Academy in Quantico, Virginia, and everyday work relating to conducting these types of investigations.

2. As a Special Agent with the FBI, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. I am currently involved in the investigation of **RAYNARD CLAYTON**. As will be shown below, there is probable cause to believe that **CLAYTON** has violated Title 18, United States Code, Section 875(c), Interstate Communications of a Threat, and Title 18 United States Code, Section 1512 (a)(2)(C), Tampering with a Witness, Victim, or an Informant. I submit this application and affidavit in support of a complaint and arrest warrant authorizing the arrest of **RAYNARD CLAYTON** of ▇ Minota Avenue, Akron, Ohio, for these violations.

3. **RAYNARD CLAYTON**, aka Raynard Dutch[1], is a black male with the date of birth of XX/XX/1983. **CLAYTON** resides at ▇ Minota Avenue in Akron, Ohio. **CLAYTON**

---

[1] The Journal Entry of Arraignment from Summit County Court of Common Pleas, Case Number CR-2010-03-0884, the court amended the indictment to reflect the defendant's name as " Raynard Dutch, aka Raynard Clayton."

1

has an extensive criminal history and has served multiple prison sentences to include: 2002 – Unauthorized Use of a Motor Vehicle (M-1) with a sentence of six months in jail; 2007 – Domestic Violence (F-4)[2] with a sentence of six months in prison; 2009 – Domestic Violence (F-3)[3] with a sentence of three years in prison; 2010 – Burglary (F-2) with a sentence of five years in prison; 2010 - Burglary (F-2) with a sentence of two years in prison; 2010 - Burglary (F-2) with a sentence of two years in prison (the three convictions for burglary were served concurrently); and 2016 – Aggravated Possession of Drugs (F-3), Possession of Drugs (F-5), and Aggravated Trafficking in Drugs (F-3) with a sentence of one year in prison.

4. The statements in this Affidavit are based on my personal observations and those made by other law enforcement officers. Since this Affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to establish probable cause that **RAYNARD CLAYTON** has violated Title 18, United States Code, Sections 875(c) and 1512 (a)(2)(C).

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of Title 18, United States Code, Section 875(c), prohibiting the interstate communications of threats as well as 18 United States Code, Section 1512 which prohibits a person from using physical force or the threat of physical

---

[2] In the State of Ohio, under Ohio Revised Code Section 2919.25(D)(3), to be charged with a Felony of the Fourth Degree, the defendant must have either a prior domestic violence conviction or knowingly caused or attempted to cause physical harm to a family or household member or recklessly caused serious physical harm to a family or household member.

[3] In the State of Ohio, under Ohio Revised Code Section 2919.25(D)(4), to be charged with a Felony of the Third Degree, the defendant must have two or more prior domestic violence convictions and knowingly caused or attempted to cause physical harm to a family or household member or recklessly caused serious physical harm to a family or household member.

force with the intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings.

## BACKGROUND OF INVESTIGATION

6. I first became aware of **CLAYTON** in August of 2017, when he became a possible suspect in a destructive device (pipe bomb) investigation by the FBI. During the course of the destructive device investigation, I determined that it would be necessary for me to make contact with VICTIM #1.

7. On February 2, 2018, I contacted an identified female with access to VICTIM #1 and requested that the identified female inform VICTIM #1 that I would like to speak with VICTIM #1 regarding an on-going Federal investigation. The identified female indicated she would contact VICTIM #1 and provide him/her with my contact information.

8. On February 5, 2018, I observed and recorded a publicly available Facebook Live video from a Facebook page operating under the username Raynard Dutch (Facebook ID 100009423530232). The video pictured **RAYNARD CLAYTON**, making threats against VICTIM #1. In the video, **CLAYTON** threatened VICTIM #1 by using VICTIM #1's known nickname, as well as his/her true name. The video is approximately 21 minutes in length. In the video, **CLAYTON** threatened to assault and kill VICTIM #1 to prevent him/her from speaking to the FBI and offered $500 to anyone willing to bring VICTIM #1 to **CLAYTON**.

9. I am familiar with the Facebook page operating under username Raynard Dutch (Facebook ID 100009423530232) and know it is used by **CLAYTON**. The profile picture and numerous videos which are publicly viewable on the account depict **CLAYTON**.

10. I am familiar with **CLAYTON** through prior law enforcement contact and was able to identify **CLAYTON** as the individual depicted in the video making threats against VICTIM #1. **CLAYTON** has numerous unique facial tattoos, which aided in identification. Additionally, **CLAYTON** identifies himself in the video as Ray Ray, a known nickname for **CLAYTON**.

11. Within the first minute of the video, **CLAYTON**, in what appears to be a free-style rap, stated: "I'm a put 'em on blast, VICTIM #1 (nickname) I'm on your ass, n***a. I'll shoot you point blank range, no mask, n***a." ... "Drop a n***a body over the mothaf***in treason." ... "Get you and your family wrapped up. AR-15, you know what that mean."... "I don't give a f**k if they catch me, then it's back to the yard (prison)."

12. Approximately 1 1/2 minutes into the video, **CLAYTON** changed from rapping to talking and stated, "Victim #1 (nickname) n***a, I'm on your ass n***a, you the feds n***a. The best type of cop is a dead cop."

13. Approximately 8 1/2 minutes into the video, **CLAYTON** again changed from rapping to speaking and stated, "Hey, first mothaf***er that know Ray Ray (**CLAYTON**), and that know VICTIM #1 (nickname) or VICTIM #1 (true name), that tell this n***a, where I, that bring this n***a to me man. I got 500 for a n***a to bring me VICTIM #1 (true name), I'm not sending no hits, I'm not doin none a that. I got 500, n***a. VICTIM #1 (true name), you's a

4

b**ch, n***a. And I'll put it out there, my baby mama put your b**ch ass on blast last night, n***a. Tryin to set me up, huh? I'm a show you what a p**sy do, p**sies get f**ked."

14. Approximately twelve minutes into the video, CLAYTON rapped, "Cause I don't want to kill you dog, the world already punished you enough."

15. Approximately 16 minutes into the video, CLAYTON stated the following while speaking not rapping, "Hey b**ch, basically what I'm sayin' to you is keep my name out your mouth fo (before) I take yo (your) life."

16. At approximately 20 minutes into the video, CLAYTON turned the camera toward a white male with curly hair he refers to as "B." CLAYTON asked the white male, "B, what was said last night? We ain't gonna say no names and who said it, but what was said about VICTIM #1 (nickname), VICTIM #1 (true name)?" The white male responded, "Talking to them feds boy (Victim #1 was talking to Federal law enforcement)." CLAYTON then asked the white male, "And he talkin' bout who?" The white male responded, "You."

17. In the last minute of the video, CLAYTON stated the following while speaking not rapping, "I swear to god man, this n***a name is VICTIM #1 (nickname) bro, real name VICTIM #1 (true name). I give a n***a 500 ($500), whatever. I just want the n***a to just just, I, I, I just want to beat the n***a ass. I, I ain't even gonna fight the b**ch, cause he already, he already lyin' to the police."

18. CLAYTON made two statements, noted above in paragraphs 12 and 15, which suggest CLAYTON does not want to kill or fight VICTIM #1. However, these statements appear to be solely self-serving in nature and stated in an attempt to avoid criminal prosecution. Further, these statements comprised fewer than 20 seconds of the approximately 22 minute

5

video. Additionally, the overall theme of the video is threatening the assault and killing of VICTIM #1. Based on my training and experience, my knowledge of **CLAYTON** and my experience in this investigation and the 2017 investigation, all of these statements referred to above were threats to kill or injure Victim #1 and not merely aggressive lyrics in a rap song. I further believe that, based on **CLAYTON's** statements, the threats were made to intimidate Victim #1 to prevent him from communicating with or cooperating with Federal law enforcement regarding Federal crimes committed by **CLAYTON**.

19. On February 6, 2018, a representative for Facebook informed FBI Special Agent Charles E. Johnston that all content on Facebook is processed through Facebook data centers. I conducted a review of website https://newsroom.fb.com/company-info/, which lists all Facebook data centers. No Facebook data centers were identified as being located in the state of Ohio. Given that all Facebook content must pass through Facebook data centers and there are none in the state of Ohio, there is probable cause to believe the aforementioned Facebook Live video was transmitted in Interstate commerce.

20. Upon review of **CLAYTON's** Facebook page and previous postings by **CLAYTON**, I determined that Victim #1 has been linked to **CLAYTON's** Facebook page. This is based on prior postings by **CLAYTON** which were commented on by Victim #1.

## CONCLUSION

21. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that **RAYNARD CLAYTON**, on February 5, 2017, did violate Title 18, United States Code, Section 875(c), in that he did transmit in interstate commerce a threat to injure the person of another to wit; VICTIM #1, and also on February 5, 2017, did violate Title 18, United States Code, Section 1512, which prohibits a person from the

threat of physical force with the intent to hinder, delay, or prevent the communication to a law enforcement officer of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings, to wit; **CLAYTON** threatening to assault and kill VICTIM #1, believing that VICTIM #1 intended to speak to "the feds."

I, therefore, respectfully request that the attached warrant be issued authorizing the arrest of **RAYNARD CLAYTON**.

Ryan A. Martin, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this _8th_ day of February, 2018.

Kathleen B. Burke
U.S. Magistrate Judge

7